Good morning. Good morning. Good morning, counsel. Pleased to meet you. Bradley Meisner of Fenwick and West on behalf of Isaiah Noel Williams. With me today are my colleagues Haley Teton and Elizabeth Hagen. Before the district court, Mr. Williams asserted section 1983 claims relating to two discrete events. One, the defendant's actions in causing and responding to an altercation between Mr. Williams and another prisoner. I'm having trouble hearing you. Can we turn up the volume a little bit, please? My apologies. I'll stand closer to the mic as well. Mr. Williams claims relate to two discrete events. First, the defendant's actions in causing and responding to an altercation between Mr. Williams and another prisoner. And second, the defendant's denial of Mr. Williams' right to appear at a prison disciplinary hearing relating to that altercation. Let me ask you about that part of it. Let's assume that he had a right to be at this hearing and that that right had been clearly established. In other words, the district judge was wrong in saying that qualified immunity applied. With respect to that, if I understand correctly, that there was no violation. Okay, are you following me? Yes, I understand. Okay. In what way was he prejudiced? I understand that he testified at his trial here in this case that he basically started a fight with this guy. So if he should have had a hearing and would have testified the same way, how was he prejudiced? He was prejudiced, one, in that the exclusion or the grant of summary judgment on his due process claim affected his ability to plan and prepare that claim for trial. Second, there was... I don't understand what you mean. Well, he had a right to prepare for trial with that claim on the table and to present evidence relating to that due process claim. If he should have been given a hearing and he wasn't given a hearing, but if he had been given a hearing and he would have said, I started a fight with the guy, if he would have testified at the hearing at Pelican Bay, the way he testified in front of the court presided over by Judge Wilkin, he would have lost at the disciplinary hearing, right? I don't think that's necessarily true. He testified he started a fight with a guy who he saw passing by his cell. He testified that when the defendant opened the cell block door while another inmate was, another prisoner was unsecured outside of his cell, that he did in fact instigate the altercation, but he also testified that he felt that he had absolutely no choice but to do so for a variety of reasons. Okay, but if he testifies that he's instigated a fight, that's not a defense, is it, to a disciplinary violation? Your Honor, I don't know what the disciplinary board would have done with that evidence, and I don't think that he had to prove in order to prevail on his due process claim that he wasn't given an opportunity to attend the hearing. I don't think he has to prove that he in fact would have prevailed in overcoming the discipline. In a due process claim, you don't think he has to prove prejudice in a due process claim? The prejudice, Your Honor, is that, again, he wasn't given the opportunity to appear at all and to make his case. I don't know that he has to show that it necessarily, that he affirmatively bear the burden of showing that he would have in fact prevailed on the claim. I do think also that the evidence before the district court could support a claim that he would, you know, that he would have not necessarily been convicted of the offense of battery in the disciplinary hearing. He would have at least had the opportunity to present his side of the story, which again was that he felt that he, under the circumstances, had no choice but to do so, that the defendant's violation of prison policy and regulations put him in an unsafe situation in which he, you know, had to respond. Do you think he would have gotten a better hearing at Pelican Bay than he got out of the jury? Well, Your Honor, the claims relating to the due process violation are not necessarily governed by the same evidence relating to his claims of retaliation and excessive force against the defendant. The only two claims that went to the jury were retaliation and excessive force. A jury could have found that Mr. Williams did not prove his claims that the defendant retaliated against him or that the defendant used excessive force, but that same jury, if presented with his due process claim, could still have found that even if the situation was not created intentionally by the defendant and the defendant did not use excessive force, that Mr. Williams was nevertheless justified or at least excused in instigating the altercation because of the situation that he found himself in. And I think that evidence relating to his due process claim, you could have a verdict that found for Mr. Williams on the due process claim, I think, consistent with the jury's verdict on the retaliation and the excessive force claims. Suppose we were to disagree with you and say his proposed defense at Pelican Bay was really no defense at all. It's not really a cognizable defense. You don't have a right in prison to start a fight. It wouldn't have helped him. Is that the end of the story, then? If the court were to determine that he, in fact, had to show that he would have prevailed at his disciplinary hearing and that the testimony that Mr. Williams gave at the trial itself foreclosed any possibility that he would prevail at his disciplinary hearing, then yes, I believe he would lose on this. I take it you're relying on Wolf v. McDonald? That's correct, Your Honor. Is there anything in that opinion which would exclude the normal issue of prejudice, such as you've been discussing with Judge Silverman? In Wolf, Wolf involved, I believe, a class action of prisoners challenging various aspects of the prison disciplinary process, and Wolf set out what it perceived to be the bare constitutional minimums for that process. Among those were advance notice of the hearing, the right to call witnesses, and a number of other things. But address it with respect to this case here. You're relying on the absence of a hearing, are you not? Not the absence of a hearing. There was a disciplinary hearing conducted in absentia. We're relying on the deprivation of Mr. Williams' right or opportunity to, right to have an opportunity to attend that hearing. To attend the hearing, right. Correct. And I take it your best authority is Wolf? So from the Supreme Court, Wolf, in 1974, it didn't explicitly recognize the right to be present at a disciplinary hearing, but some of the procedures that it recognized implicitly require that the prisoner be given the right to be present. And what's your strongest case that would compel us to reverse on the basis that he was denied a recognized right to attend a hearing? So prior to September 2006, when the events at issue occurred, you have Wolf, which again I would submit the right to attend is implicit in Wolf. You have Bartholomew v. Watson from this court, 1982, and Mitchell v. Dupnick, 1996, from this court, both of which held that prison officials cannot categorically prohibit prisoners from calling witnesses at disciplinary hearings. Both of those, again, implicitly assume and require that the prisoner, in fact, be given a right to attend. You have Wright v. Enomoto, a 1978 decision decided by a three-judge panel of the Northern District and summarily affirmed by the Supreme Court, which this court has held is binding on it, that expressly recognized that Wolf gave prisoners the right to have an opportunity to attend the hearing. Prior to 2006, you also had four other circuits, the Second, Fifth, Sixth, and Eleventh, that had all expressly stated that Wolf provides prisoners a due process right to attend prison disciplinary hearings, as well as the decision of the California Supreme Court. Now, in its summary judgment ruling against Mr. Williams, the District Court relied on two circuit cases that it said showed that there was a split or some disagreement in the existing case law about whether a prisoner had a due process right to attend a disciplinary hearing at that time. Neither of those cases, however, is at all inconsistent with the idea that there is, in fact, such a hearing, such a right. The Seventh Circuit decision in Wheeler v. Sims involved only the question of whether a prisoner who has refused to appear at a disciplinary hearing has, in fact, a due process right to provide a written statement and held that it did not have such a right. And the Second Circuit's decision in Francis v. Coughlin considered only whether the prisoner has a right to be present during the testimony of his witnesses, held that that was not a constitutional right. Again, that's not inconsistent with Wolfe, and not inconsistent with the idea that Wolfe, in fact, grants a right to prisoners to attend prison disciplinary hearings. Based on that consensus of authority, and in fact, we're not aware of any case that, in fact, holds that Wolfe did not provide such a right, we submit that the District Court erred as a matter of law in finding that the right to attend a prison disciplinary hearing was not clearly established as of September 2006. You may want to reserve the rest of your time for rebuttal. If I may briefly touch on the second issue, Your Honor. The second issue is that the District Court improperly admitted evidence relating to Mr. Williams' prison gang, as well as evidence of Mr. Williams' general white supremacist beliefs. Courts have long recognized that that evidence is not categorically inadmissible. Gang affiliation evidence, when relevant to an issue in the case— Isn't it relevant to this particular case? This is all about gang affiliation within the prison, is it not? Your Honor, the fact that Mr. Williams and Mr. Powell, the two prisoners involved in the altercation, were members of or validated as members of rival prison gangs was relevant, and Mr. Williams conceded that at the District Court. What Mr. Williams sought to preclude was the admission of evidence relating to the specific name of the prison gang that he had been validated as a member of, which is the Nazi Lowriders, as well as the other evidence that would suggest that he held white supremacist beliefs. To that end, Mr. Williams offered to stipulate that the two prisoners involved had been validated as members of rival prison gangs, and that stipulation, if accepted by the District Court, I think would have accomplished and would have served any relevant purpose for which evidence relating to Mr. Williams' gang affiliation could go. The District Court declined to accept that stipulation and instead allowed the defendant to introduce evidence that Mr. Williams had been validated as a member of the Nazi Lowriders and that he had a tattoo that read, White Pride, but that evidence wasn't connected to anything relevant in the case. Its only effect was to prejudice Mr. Williams in the eyes of the jury, and in a case like this where the credibility of the witnesses was paramount, that error is necessarily not harmless and Mr. Williams is entitled to no trial on those claims. I'll reserve the rest of my time. Thank you. You may do so. We'll hear from the State. Good morning, Your Honors. May it please the Court, Lynn Stocker appearing for the appellee, Officer Williams. Preliminarily, there is no error made at the District Court level. The District Court put a lot of time and effort into the ruling on the motion for summary judgment and found that the right to personally attend the disciplinary hearing was not clearly established at the time that the hearing was held in absentia in 2006. Why isn't that implicit in Wolfe, the right to attend the hearing? Well, actually, Your Honor, there is no explicit mention of the right to attend a hearing in Wolfe. Right. I said, why is it implicit? Well, because if you assume that you have to be present, for example, when other witnesses testify, then you could find an implicit right to personally attend. Well, I mean, Wolfe holds that an inmate has the right to advance notice of the violation, right? Correct. The right to call witnesses and present evidence? Correct. How do you do that unless you're there? Well, you could have witnesses testify without being present. There are cases that have held that if the witness inmate was too disruptive to be personally present that the case . . . Okay. That's the right to be present, then also you can lose your right by your misbehavior. But if you're not misbehaving, doesn't this imply that you have a right to be present to call witnesses and present evidence? That's an implication. Right. That's what I'm asking you. Isn't that implied by this? Some courts have made that implication. Some courts have not. And we provided the citation to the Northern District case of, I don't know how to pronounce it, Yonai, Y-O-N-A-I, for the proposition that even at the time of that decision in March of 2009, the Northern District Court found that the right to have an inmate personally present at a hearing was not clearly established and that the . . . was not one of the five procedural requirements in Wolf. So even as late as 2009, we have a district court in the same position as Judge Wilkin in our district court situation, finding the same thing that Judge Wilkin found, which was that there was no clearly established right to personally attend the hearing. Does the inmate have a right to have an attorney at the disciplinary hearing? Not in the Pelican case. All right. But you say he can call witnesses. How can he examine witnesses if he's not there? Well, I don't know whether the Wolf . . . I don't think the Wolf case says that the witness has to have the right to cross-examine witnesses. No, no, no. Direct examination. He can call witnesses, right? Correct. How can he get testimony out of witnesses if they're not examined? He can't have an attorney. And how does he get . . . the witness shows up and says, I'm a witness. And . . . Is that enough? Well, I believe it is enough, Your Honor, and I will . . . Even if he doesn't say a word because he hasn't been asked a question? The inmate can talk to the witnesses prior to the witness's appearance at the hearing and the witness can testify on behalf or can testify . . . Who's going to ask the questions of the witness? Pardon me? Who is going to ask the questions of the witness? I don't think it's necessary that someone ask questions of a witness if the witness comes to the hearing and makes a statement. Is there a hearing officer? There is a hearing officer. Does the hearing officer rule on inadmissible evidence? Never having attended one of these hearings, Your Honor, I . . . Isn't this an absurd conversation we're having? Obviously, the defendant has to be present if he's going to call witnesses in order to get testimony out of the witnesses. Let's go to something else. What is your position as to the issue of prejudice which was brought up by Judge Silverman? Is there any showing that Mr. Williams could have presented evidence at the hearing which would be different from that which he presented at the trial and therefore have justified a ruling in his favor at the hearing? Absolutely not, Your Honor. The reason for that is that there was no testimony either . . . At the disciplinary hearing, the ruling was based on the reports provided by the correctional officers. Those reports are completely consistent with the testimony that Mr. Williams provided at trial and in his deposition about how the attack on inmate Powell occurred. There is nothing that Mr. Williams has presented at any time in this case which would indicate any different factual situation. So, in other words, assume that Mr. Williams went to the disciplinary hearing, his explanation would be the same. He attacked the other inmate. He could have stayed in his own cell. Nobody forced him to come out to attack the other inmate. Could he assert provocation? He could argue provocation, I assume. He argued at the trial his opinion that Officer Williams opened the door to cause the altercation. The jury didn't believe that part of . . . The jury has nothing to do with this issue, does it? If he gave the same story, then the evidence would have to be provided. But the testimony that Mr. Williams gave at the trial would necessarily be the same evidence that he would have given at the disciplinary hearing. Has Mr. Williams proffered or referred to any other evidence than that which he gave at the trial? No, Your Honor. As establishing a basis for a favorable ruling at the hearing? No, Your Honor. And I would also point out that Mr. Williams' reliance on the Obrey case of this circuit in 2005 is misplaced in holding . . . Mr. Williams contends that it is the appellee's burden to show that there was no prejudice. However, the Shosinski v. Sanders case of 2009, 556 U.S. 396 U.S. Supreme Court case holds that the party seeking that a judgment be set aside due to an erroneous ruling has the burden of showing that prejudice resulted. And Mr. Williams has not made the necessary showing with respect to his claim that for whatever reason he was prejudiced by not being able to attend his hearing. There's no evidence before this court, or was there any evidence before the court at the district court level, as to what prejudice, if any, has actually occurred. Even if this case were to be remanded on the issue of the due process claim, the evidence would be the same. The evidence would have been the same at the disciplinary hearing. It was consistent with the evidence that was presented to the disciplinary hearing officer. The evidence would be presented . . . The same evidence would be presented in support of the due process claim that was presented in the trial court in support of the claim that my client was deliberately indifferent to Mr. Williams' safety, or that she retaliated against him. There is nothing in the record to indicate that there was anything different that would have changed the result. There's no evidence of any causation here. May I address the issue of . . . The trial simply found that Officer Williams was negligent leaving the door open, wasn't doing it on the basis of intentional indifference or any bad motive. And that was the basis for a defense verdict. So that the evidence of retaliation and excessive force at the hearing might have carried the day. If he'd been there. That would assume that the disciplinary officer viewed the evidence in a different light. Yes. And they viewed the evidence . . . The only thing they did not have at the disciplinary hearing was Mr. Williams' direct testimony. They did have all of the reports of the officers which were consistent with the testimony that was provided at trial. I'm getting a little confused. There were two claims here, basically, right? One was excessive force and deliberate indifference in the way this thing was . . . the cells were open and closed. Correct. That one was tried to a jury. Those issues were tried to a jury, correct? Yes. The next issue was his due process rights violated in not going to the hearing. And that was kicked out on summary judgment. Correct. Do I understand this right? Correct. Okay, because I'm getting them mixed up here. Okay. So . . . Well, okay, I've got it straight. Okay. But you're relying on the fact that whatever he said to the jury in the jury trial would have to be the same as what he said . . . what he would have said if he had attended the hearing. Yes, Your Honor. And you're therefore asking us to hold that the petitioner failed to establish that there was prejudice. Correct. And if any error was made, it was a harmless error. Okay. I'd like to address the issue of the evidence of the gang affiliation. My colleague neglected to mention very significant testimony by Mr. Williams' own expert in his Rule 26 report. And that testimony in that report was the basis for the judge's initial ruling on the motion in limine. This was before any evidence at trial had been introduced. Mr. Subia, plaintiff's Mr. Williams' expert, was of the opinion that the fact that Mr. Williams belonged to the Nazi lowrider white supremacy gang and Mr. Powell belonged to the black guerrilla family gang was of particular significance to his opinion that Officer Williams was grossly negligent and failed to comply with protocol in opening the cell doors when Mr. Powell was still outside of his cell. It's not simply a matter of being two rival gangs. Even Mr. Williams' own expert, or according to Mr. Williams' own expert, that factor, the names and the characteristics of the two particular gangs that the inmates belonged to, made the situation even more egregious. And the fact that Mr. Williams wanted to refer to it as two rival gangs, simply did not rise to the level of egregiousness that his own expert called into play. And Mr. Subia's report was the initial basis for the court's ruling on the motion in limine. And the fact that the district court went to great lengths to limit the prejudice that may arise out of the names of the gangs being heard by the jury. And she took that into consideration. She gave a limiting instruction. She advised, she limited the photographs that could be used. And she took the steps that were necessary in order to be able to limit the amount of prejudice. It's not simply a matter of prejudice. It's a matter of undue prejudice. And there has been no showing here that Mr. Williams was prejudiced by the introduction of that evidence. Mr. Williams argues that his credibility was potentially at issue as a result of that evidence. He shows, he has given us no evidence of what testimony he gave by which his credibility was questioned. And I'm running out of time, so if you have no further questions... No further questions, thank you, counsel. Thank you, Your Honor. Mr. Meisner, you have some reserved time. Thank you. I just wanted to start by clarifying, perhaps, Judge Silverman, a response to your question about, you know, if you found that there was, you know, in fact, a requirement that Mr. Williams show that the disciplinary hearing outcome would have been different, is that the end of the case? I wanted to clarify that if, in fact, Mr. Williams is entitled to a new trial on the claims that were tried based on the district court's erroneous admission of evidence that harmed his credibility, I think that would also, irrespective of what the court found about the prejudice issue on his due process claim, require that he be given an opportunity to try that claim to the jury as well. Well, what would have been different? If he were at the hearing and had the opportunity to give his own testimony or call somebody, what would be different? I think the underlying facts that he testified to at trial would have to be the same since he is testifying truthfully to the district court, but I think that testimony could have been expanded with additional facts about the context and the circumstances that were not necessarily the focus of his testimony at trial, particularly because his due process claim and the entire issue relating to his disciplinary hearing was not before the court at that time. Mr. Williams' trial counsel could well have determined that in order to show that he would have been prejudiced in connection with this disciplinary hearing, could well have worked on eliciting additional testimony about the circumstances surrounding the incident, not specific to defendant's conduct, but specific to Mr. Williams' reaction to the situation, circumstances that would mitigate and or, again, potentially excuse his response to the door being opened. But because that claim was not before the district court, and in fact, Mr. Williams' trial counsel stipulated before trial that he could not reference his due process claim at all before the jury, he didn't get a chance to put that information on. Just to touch on the issue of gang affiliation evidence and the plaintiff's expert report, it seems as though counsel is saying that because the district court found that the introduction of this evidence should be favorable to you, so we're stuck with it. In fact, Mr. Williams gets to, you know, determine his trial strategy and what evidence to introduce. His expert report was not itself evidence at the trial when he sought to exclude that testimony relating to gang affiliation. And Mr. Williams should be given, you know, gets the opportunity to decide whether the probative value for him of that evidence is substantially outweighed by the prejudicial effect. Thank you very much. Very well, counsel. The case just argued will be submitted for decision.
judges: O'scannlain, Silverman, Bea